UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-20324-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,
    Plaintiff,

v.

MICHAEL PERICLES,
    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20, 5/19/09) filed by defendant Michael Pericles. On May 19, 2009, this case was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida. (DE# 21, 5/20/09). Having held an evidentiary hearing on May 26, 2009 and carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully recommends that the Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20, 5/19/09) be **DENIED**.

## BACKGROUND

The defendant is charged by indictment with possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922(g)(1). See Indictment (DE# 10, 4/14/09). On May 26, 2009, the defendant filed the instant Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20). The government filed its response on March 25, 2009. See Government's Response to Defendant's Motion to Suppress Statement and Physical

Evidence (DE# 27, 5/25/09).

On May 26, 2009, the undersigned held an evidentiary hearing. The government presented the testimony of Detective Luis Cerra and Task Force Officer Jason Gambill. The defendant presented the testimony of the defendant's sister, Mercy Pericles. The following exhibits were admitted into evidence: Government's Exhibits 1 through 8. The defendant did not introduce exhibits at the suppression hearing.

## FINDINGS OF FACT

**1.    The Incident**

On the evening of April 1, 2009, Detective Luis Cerra was on patrol in the Little Haiti neighborhood of Miami-Dade County, Florida. At approximately 7:30 p.m., a woman approached the officers and advised them that there was a "shoot out" on 59th Street and Third Avenue. Detective Cerra radioed this information to other officers in his squad. One of the squad members advised Detective Cerra that they had just received a call in the general area. As Detective Cerra was approaching the area, he noticed an individual in a vehicle honking his horn and trying to get the officer's attention. The individual identified himself as Mr. Lozano. Mr. Lozano told Detective Cerra that there was a shoot out and that his cousin had just been robbed by three black males who were armed with AK 47 assault rifles. Mr. Lozano took Detective Cerra to a residence located at 345 NW 59th Terrace, Miami, Florida (hereinafter "residence").

When he arrived at the residence, Mr. Lozano got out of his vehicle, pointed to the east side of the residence and stated, "there they go." Detective Cerra observed the bushes on the side of the residence moving as if someone was running through them. Detective Cerra crossed the neighbor's property on the westside of the residence and

jumped the neighbor's chain link fence. A wooden fence divided the neighbor's property from the residence. Detective Cerra climbed on top of a metal cart on the neighbor's property to peer over the wooden fence into the backyard of the residence.

While standing on the metal cart, Detective Cerra observed a shed and several tarps covering piles in the backyard. Detective Cerra observed the defendant coming from the east side of the house carrying a green gym bag. The defendant was running around the backyard looking for a place to hide the bag. The defendant lifted a tarp, hid the gym bag under the tarp and proceeded toward the residence. Before the defendant went inside the residence, Detective Cerra drew his weapon and yelled, "police, show your hands." The defendant made eye contract with Detective Cerra and reached into his waistband and retrieved an L-shaped object. The object made a clank, like it was made of steel, when it hit the concrete floor. Detective Cerra did not see what the object was. The defendant then reached for his waistband a second time and went inside the residence. Detective Cerra immediately radioed his squad and told the officers, who were in front of the residence, that the defendant had gone inside the residence with a weapon. A few seconds later, the squad advised Detective Cerra that they had seized two individuals.

Detective Cerra maintained his position, with his weapon drawn. After a few minutes, Detective Cerra climbed over the wooden fence onto the roof of the shed located in the backyard of the residence. Detective Cerra moved to the roof of the shed to obtain a better view of the inside of the residence through the back windows. While on top of the shed, Detective Cerra saw that the object that the defendant had dropped was a black handgun.

Detective Cerra continued to maintain his position for approximately five to ten minutes. While on top of the shed, Detective Cerra observed movement inside the residence. The squad advised Detective Cerra that they were doing a safety sweep of the residence. After the squad completed the safety sweep, they advised Detective Cerra that the house was clear.[1] Detective Cerra climbed down from the shed and began searching in the backyard of the residence for the third individual. Detective Cerra looked around the backyard, in the bushes, inside the shed and under the tarps for the third individual.

While searching for the third individual, Detective Cerra observed a loaded AK-47 assault rifle magazine on top of a tarp. Detective Cerra lifted the tarp where the defendant had placed the green gym bag and observed the butts of three guns protruding from the bag. After finding the firearms, Detective Cerra advised his sergeant and contacted law enforcement officers from the Street Terror Offender Program ("S.T.O.P.") to take over the case. Detective Cerra did not find the third individual or seize the firearms he discovered during his search.

**2.   Consent to Search**

The defendant's sister, Mercy Pericles arrived at the residence at approximately 9:00 p.m. on April 1, 2009. There were numerous polices cars and officers outside the residence. Ms. Pericles saw her brother and another individual detained in the front of the residence. Ms. Pericles came in contact with Task Force Officer Jason Gambill on the swale outside the residence. Ms. Pericles confirmed that she lived at the residence.

---

[1] The sweep of the inside of the residence did not reveal any additional suspects or evidence.

Ms. Pericles inquired about her brother. Officer Gambill informed Ms. Pericles that the defendant was under investigation for a firearms violation. Officer Gambill asked Ms. Pericles for consent to search the residence and presented her with a written form. See Written Consent Form, Government's Exhibit 7. Officer Gambill gave the form to Ms. Pericles to read. Ms. Pericles was cooperative and said it was alright to search the home but wanted to call her parents first. Ms. Pericles spoke to her parents in Creole. After she finished her telephone conversation, she advised Officer Gambill that she would sign the form (Government's Exhibit 7). Ms. Pericles signed the form at approximately 9:15 p.m. Ms. Pericles was not detained, the officers did not threaten her or make references to children.[2]

The form signed by Ms. Pericles was entitled "Waiver of Constitutional Rights: Consent to Search." See Government's Exhibit 7. The form contained the following statements: "I HAVE READ THE ABOVE STATEMENT OF MY RIGHTS AND I AM

---

[2] The defendant's then-three-year-old daughter was at the residence at the time of the incident. Ms. Pericles testified that when she arrived at the residence she asked Detective Ogden what as going on. Detective Ogden refused to answer Ms. Pericles unless she signed the consent to search form. Ms. Pericles did not read the form before signing it. After signing the form, the officers gave Ms. Pericles custody of the defendant's daughter. Ms. Pericles followed the officers through the search of the residence and the residence was in disarray. When they got to the backyard, the officers presented Ms. Pericles with the bag containing firearms and told her that the handgun was in the bag. Ms. Pericles testified that she did not see the handgun. The undersigned does not find Ms. Pericles' testimony credible. See United States v. Boulette, 265 Fed. Appx. 895, 898 (11th Cir. 2008)(citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'"). The undersigned notes that Ms. Pericles, as the defendant's sister, has an interest in testifying favorable for the defendant. The undersigned credits the testimony of Officer Gambill, that he and Detective Ogden made no threats to Ms. Pericles and that she read and voluntarily signed the consent to search form.

FULLY AWARE OF THE SAID RIGHTS" and "THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME." Id. (capitalization in original). Ms. Pericles' signature was witnessed by Officer Gambill and Detective Ogden.

After Ms. Pericles signed the form, Officer Gambill and Detective Ogden conducted a search of the residence. Ms. Pericles was advised that she could accompany the officers while they searched the residence. Ms. Pericles agreed to do so. Ms. Pericles was also told she could object to the search at any point.

Officer Gambill and Detective Ogden's search of the inside of the residence did not reveal any evidence. The officers recovered three assault rifles, magazines, rounds of ammunition and a handgun from the backyard.

### 3. Defendant's Post-Miranda Statements

The defendant was arrested and taken into custody. While at the police station, Officer Gambill presented the defendant with a form entitled: "Miranda Warning." See Government's Exhibit 6. The form advised the defendant of the following rights:

1. You have a right to remain silent and you do not have to talk to me if you do not wish to do so. You do not have to answer any of my questions. Do you understand that right?

2. Should you talk to me, anything which you might say may be introduced into evidence in court against you. Do you understand that right?

3. If you want a lawyer to be present during questioning, at this time or anytime hereafter, you are entitled to have the lawyer present. Do you understand that right?

4. If you cannot afford to pay for a lawyer, one will be provided for you at no cost if you want one. Do you understand that right?

See Government's Exhibit 6. The defendant responded "yes" to each question. The

bottom of the form contains the following: "THIS STATEMENT IS SIGNED OF MY OWN FREE WILL WITHOUT ANY THREATS OR PROMISES HAVING BEEN MADE TO ME." Id. The defendant signed the bottom of the form on April, 2009 at 2:10 a.m. Id. On the top right corner of the form, Officer Gambill made annotations indicating that the defendant had an 11th grade education and that the defendant was not under the influence of drugs or medication. Id. The defendant proceeded to give a statement to law enforcement officers.

## ANALYSIS

**1.      Exigent Circumstances**

The defendant seeks to suppress the three AK-47 assault rifles and ammunition[3] discovered by Detective Cerra while doing a protective sweep of the backyard. The defendant argues that once the police officers conducted a safety sweep and secured the residence, Detective Cerra did not have the right to conduct a search for weapons in the backyard. The defendant further argues that Detective Cerra's search for the third individual was a pretext and that he was actually searching for weapons when he lifted the tarp.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980). The government bears the burden of proof of showing exigent circumstances. United States v. Holloway, 290 F.3d 1331, 1337 (11th Cir. 2002)."In validating a warrantless search . . . the [g]overnment

---

[3] At the evidentiary hearing, the defendant indicated that he was not seeking to suppress the handgun that defendant dropped on the concrete floor near the backdoor of the residence.

7

must demonstrate both exigency and probable cause." Id. A 'protective sweep 'is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding.'" Maryland v. Buie, 494 U.S. 325, 327 (1990). It is only justified when there is reasonable suspicion that the area to be swept harbors an individual dangerous to the police. See United States v. Delancy, 502 F. 3d 1297, 1307 (11th Cir.2007).

      Here, the officers' protective sweep of the residence and the backyard was lawful. The officers were advised that three individuals were armed and involved in a shoot out. Mr. Lozano led the officers to the residence where he believed the individuals were located and pointed in the direction of some bushes stating "there they go." Detective Cerra observed the bushes moving as if someone was moving through them. From the neighbor's yard, Detective Cerra observed the defendant coming from the direction of the bushes into the backyard of the residence. After the defendant and another individual were apprehended, officers conducted a protective sweep of the residence for the third individual. When they were unable to locate the third individual inside the residence, Detective Cerra conducted a protective sweep of the backyard for the third individual. Detective Cerra looked inside the shed, in the bushes and under the tarps. Mr. Lozano expressly told the officers that there were three individuals involved in the shoot out, after a search of the residence did not reveal the third individual, Detective Cerra had reasonable suspicion that the third individual could be hiding in the backyard.

      The defendant argues that Detective Cerra was not credibly looking for the third

individual when he lifted the tarp but was actually looking to determine the contents of the gym bag. The undersigned credits Detective Cerra's testimony that he believed the third individual was still at large and could be hiding in the backyard after the protective sweep of the residence did not yield results. Nonetheless, the Court notes that the applicable standard in determining whether there were exigent circumstances is an objective one. "The test of whether exigent circumstances exist is an objective one. . . . [T]he appropriate inquiry is whether the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed [or removed] before a warrant could be secured." See United States v. Rodgers, 924 F. 2d 219, 222 (11th Cir. 1991) (citations and quotation marks omitted). In the instant case, a reasonable officer would have believed that the third individual was armed and possibly hiding in the backyard, including under the tarp, after a protective sweep of the residence failed to reveal the third individual.

The firearms and ammunition were discovered while Detective Cerra was performing a protective sweep of the backyard. Within the proper scope of a protective search, an officer is entitled "to seize any evidence ... discovered in plain view." United States v. Hromada, 49 F.3d 685, 690 (11th Cir.1995). "The 'plain view' doctrine permits a warrantless seizure where (1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." United States v. Smith, 459 F. 3d 1276, 1290 (11th Cir. 2006). In the instant case, Detective Cerra was lawfully in the backyard when he discovered the firearms and ammunition and the incriminating character of the firearms and ammunition were immediately

apparent. The defendant's request to suppress the firearms and ammunition should be denied.

**2.     Consent to Search**

Alternatively, the government argues that even if this Court were to conclude that Detective Cerra's sweep of the backyard was unlawful, the firearms and ammunition should not be suppressed because the defendant's sister consented to the search of the residence. "[G]eneral[ly,] . . . warrantless searches are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." United States v. Gonzalez, 71 F.3d 819, 825 (11th Cir.1996) (quotations omitted). "[I]t is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent to search." Id. at 827. The government has the burden of proving that consent to search was given voluntarily, as an independent act of free will and not mere acquiescence to police authority. Florida v. Royer, 460 U.S. 491 (1983). To be considered voluntary, a consent to search must be the product of an essentially free and unconstrained choice. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Whether consent was in fact voluntary or a product of express or implied duress or coercion is to be determined by the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544 (1980). In this case, the totality of the circumstances demonstrate that Ms. Pericles' consent to the search was voluntary.  Ms. Pericles was not constrained. She was free to leave and call her parents. The police officers did not have their guns drawn and they made no threats. The undersigned credits Detective Gambill's testimony that Ms. Pericles read the consent to search form

and voluntarily signed it. In this case, Ms. Pericles voluntarily permitted the police officers to search her residence.

### 3.  Defendant's Post-<u>Miranda</u> Statements

The defendant argues that "[t]he statements made by [the defendant] were a clear exploitation of the warrantless entry the police made into his[4] residence." <u>See</u> Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20 at 5, 5/19/09). As discussed in this Report and Recommendation, the entry and search of the residence and surrounding property was lawful. Therefore, the statements made by the defendant were not fruit of the poisonous tree. In addition, the undersigned finds that the defendant voluntarily waived his <u>Miranda</u> rights. In order to establish a waiver of <u>Miranda</u> rights, the government must show, by a preponderance of the evidence, that the defendant voluntarily, knowingly, freely and intelligently waived those rights, with knowledge of the consequences of the waiver. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986).  The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused.  <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981). Factors that should be considered in making such a determination include: age of the accused, educational level, level of intelligence, whether there was advisement of constitutional rights, length of detention and the nature of the questioning.  <u>See</u> <u>Townsend v. Sane</u>, 372 U.S. 293, 307 (1962).

---

[4] The instant motion states that the defendant and his daughter were temporarily staying at the residence. <u>See</u> Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20 at 2, 5/19/09). The defendant's sister, Mercy Pericles, testified that the defendant stayed at the residence occasionally.

The defendant was read his Miranda rights by Officer Gambill and agreed to waive those rights. The statements made by the defendant, after having been read his Miranda rights, were voluntary. The defendant was not coerced nor threatened into making statements to law enforcement. The defendant stated to Detective Gambill that he was not under the influence of narcotics or medication. See Government's Exhibit 6. Officer Gambill testified that the defendant did not appear intoxicated and appeared to understand his rights. Accordingly, it is recommended that the defendant's statements not be suppressed.

## CONCLUSION

The defendant's Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20, 5/19/09) should be denied. The firearms were discovered by Detective Cerra during a lawful protective sweep of the backyard of the residence. The defendant's sister's consent to search her residence was valid. Additionally, the defendant's post arrest statements to law enforcement should not be suppressed. The defendant knowingly and voluntarily waived his Miranda rights. The defendant was neither coerced nor threatened into making statements to law enforcement.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Motion to Suppress Statement and Physical Evidence and Memorandum of Law in Support Thereof (DE# 20, 5/19/09) be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation

with the Honorable Patricia A. Seitz, United States District Judge, within five (5) days[5] of receipt of a copy of this Report and Recommendation. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). **A party filing an objection to this Report and Recommendation shall order a transcript of the suppression hearing and promptly provide a copy to the district court.**

      DONE AND ORDERED, in Chambers, at Miami, Florida, this **27th** day of May, 2009.

                                                            JOHN J. O'SULLIVAN
                                                           UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All Counsel of Record

---

[5] The matter is set for trial commencing on June 8, 2009. The parties should file any objections to this Report and Recommendation within five days.